Good morning, everyone. Please be seated. The court is privileged and pleased to welcome again for a second day of sitting with us District Judge T.S. Ellis III from the Eastern District of Virginia, based in Alexandria, a 20-year member of that trial court, and also sat frequently with the Fourth Circuit Court of Appeals. And we drafted him and are very grateful for his participation and assistance. The panel has before it today four cases for argument, and two cases are being submitted without argument on the briefs later today. The latter two cases are in Appeal No. 06-3036, Kane v. Merit System Protection Board, and Appeal 06-3161, Dennis v. Veterans Administration. First on the argument list is Appeal No. 06-5013, Hawkins v. United States. Ms. Stern, good morning, welcome. Please begin. Good morning, Your Honors, and may it please the Court. The issue in this case is whether the Bureau of Justice Administration, the agency charged with implementing and administering the Public Safety Officers Benefits Act, reasonably interpreted that act. The BJA has consistently limited benefits under the act to instances where the deceased were involved with the enforcement of criminal laws and denied benefits to those solely involved with civil laws. Do you need to defend your view on the regulations, or could you prevail simply on the language of the statute? For example, you use in your opening portion of your argument here the word involved. As I recall, the word involved is actually in the statute itself and not just in the regulation. So do you really need the regulations to maintain your position? Well, the statute, of course, is what governs the case. The statute has embodied within it the two-part test. The individual has to be, or a multi-part test, the individual has to be a law enforcement officer involved in enforcement duty, killed in the line of duty. So, of course, we can make our arguments solely based on all of those different aspects of the statute without ever getting to the regulation. The court, of course, invalidated BJA's regulation, and we believe that was an error because the regulation is consistent with the language of the statute. Do you take it to be conceded by the other side that the specie of the genus public safety officer that Mrs. Hawkins could fall into would only be a law enforcement officer? I did take that to be conceded, Your Honor. That's never been raised. It's never been in the claim that she would fall under an entity. So the critical issue would seem to be what's the proper definition of law enforcement officer? That's correct, Your Honor. And there we have essentially one sentence in the statute and then some further definition in the regs that were invalidated by the trial court. Well, the regulation that was specifically invalidated by the trial court, the trial court judge focused more on the line of duty reg rather than the regulation pertaining to law enforcement officer. The regulation pertaining to law enforcement officer mimics the original language of the statute defining a law enforcement officer as an individual involved in the enforcement of the criminal law. There was a time when, of course, the word criminal was dropped from the statute and that's the statute that was in effect at the time that Mrs. Hawkins was killed. The current version of the statute, which was passed in effect of 2006 just after this case was decided, reinserted the word criminal laws. But the regulation that was at issue when Mrs. Hawkins was killed did have the word enforcement of criminal laws in it. It never changed. It never changed. Actually, it did change for a few years. In 1984, when the statute dropped the word criminal laws, the regulation followed suit and also dropped it. But in 1992, long before the reinsertion of the statute, the regulation put the word criminal back in. Basically, their interpretation has consistently been that the phrase enforcement of the laws does mean enforcement of the criminal laws. Well, is it the heart of your position that in correctly construing the phrase enforcement of the laws, the reg writers properly should look, had to look, at the rest of the sentence, the preceding and subsequent language, which talk in terms of things like crime control?  I didn't see anywhere in the opinion below where that preceding language about crime control was discussed or distinguished or explained away. Did I miss something? I don't believe so, Your Honor. Where the court below did not analyze the phrase enforcement of the laws in the context in which it appears, didn't really examine it in light of the legislative history of the statute, simply asserted that enforcement of the laws must mean both civil and criminal laws. But we would argue that the plain language, the context in which it appears, as well as the legislative history, completely supports BJA's interpretation of that phrase as meaning enforcement of the criminal laws. What about the issue of accidental death? That is kind of a red herring in this case, Your Honor. The court below suggests that BJA's regulation was an attempt to preclude recovery for accidental deaths, to achieve something it couldn't achieve when the statute was being passed. But the BJA's regulations don't have anything to do with accidental death. They don't exclude recoveries for accidental death. They only go to the definition of law enforcement officer and line of duty. So that really was a red herring on the part of the trial court. Ms. Stern, isn't the line of duty point also a red herring? Because if you lose on the criminal law point and the statute is interpreted to cover non-criminal law activities, she was within the line of duty. I mean, she was not engaged in entertainment or frivolity, frivolous activity. She was doing her job. So if you lose the line of duty argument, it doesn't seem very persuasive. Well, I don't think that that's necessarily true. Clearly, if we win on the law enforcement officer definition, that's the end of the case. If the court disagrees with our argument on the law enforcement officer, we still have to remember that the statute does have more than one requirement.  And the line of duty is not defined anywhere in the statute, leaving the Bureau of Justice Administration to fill in that gap as the agency charges. Well, if she were a law enforcement officer, out of uniform, doing something not in the line of duty, then line of duty would matter. But here she was clearly doing something in the line of duty. The question was, is whether it needs to be involved in criminal activity or was. Well, she wasn't doing something within the line of duty under BJA's definition of line of duty. So your argument there would be a Chevron argument. Exactly, Your Honor. We would say that even if the court disagrees with the definition of law enforcement officer, it still has to look separately at the line of duty requirement and deferences due to the BJA under the Chevron analysis for its regulatory definition of line of duty. Is it agreed that there's no explicit or implicit definition in the statute of the phrase line of duty? I don't believe there's any dispute about that, Your Honor. And so then your argument is essentially this is an important phrase, maybe outcome determinative in many cases, that Congress left undefined and therefore was part of the delegation of authority to the regulation drafters. That is absolutely correct, Your Honor. And then at that point, since there can't be a conflict if there's no definition in the statute, the only basis I can think of for overthrowing the regulation would be if it's unreasonable. I could not have put it better, Your Honor. Thank you. Yes, that is exactly correct. And I would like to point out, of course, that this Court's predecessor to the Court of Claims has already upheld the BJA's regulation for line of duty in cases that admittedly concern the first part of the line of duty regulation, that pertaining to officers whose primary duty is criminal law enforcement. Court of Claims? Yes, yes, absolutely, Your Honor. In Harold v. United States, they specifically looked at that particular regulation, upheld it, and said it was consistent with the statute. Now, again, I have to admit that was the first part of the line of duty regulation pertaining to primary officers whose primary duty was criminal law enforcement, not the second part. But, yes. All this might have a different outcome if the sheriff in Washoe County had written a memorandum saying, by the way, let's give firearms to these persons, let's teach them how to arrest people and give them arrest responsibilities. Then the whole thing would have been turned around. Oh, absolutely, Your Honor, absolutely. If Ms. Hawkins had had those actual crime-fighting duties, criminal law enforcement duties, then she might have qualified as a law enforcement officer. When you say duties, are you meaning was so assigned by superiors in the law enforcement agency, the sheriff's department in Nevada, for example? I'm talking, yes, Your Honor. I'm talking about actual authority and duties, for example, looking at the position description, looking at what- Wait a minute. This is exactly what I'm trying to figure out. You're talking about actual duties and authority could be two different things. The Nevada statute seems to say all deputy sheriffs have all the law enforcement powers. So if she was a deputy sheriff, duly appointed under that statute, then in terms of authority, Mrs. Hawkins did have arrest power, et cetera, et cetera. But maybe she wasn't assigned to use such powers or equipped with a weapon, et cetera, to use such powers. So I'm trying to understand to what extent you're depending on a conferral of authority by a statute, to what extent you're depending on an assignment by a superior, where the line is drawn. Well, we're looking at what the superior actually delegates. The reason for that is the statute says may. Exactly, Your Honor. In this case, the Nevada statute says that the sheriff may appoint deputy sheriffs who may exercise all the authorities of the sheriff. In this case, that's simply not what happened. The sheriff did appoint her a deputy, but he never authorized her to carry a firearm, make arrests, and he certainly never assigned her duties that would indicate that he had delegated that authority to her. And if she were such a police officer like that, then even if she were injured or hurt in a parade or something, she'd get benefits. That would be true if her primary duties were criminal law enforcement, yes, Your Honor. If we agree with you on the criminal law point, do we remand or reverse? Does it have to go back on whether these activities were criminal law enforcement activities? I'm sorry, say that again, Your Honor. Do we need to remand or vacate if we agree that the statute requires criminal law enforcement? No, Your Honor, because the facts really below are not in dispute. I gave you a choice, and you said no. Oh, I'm sorry, a remand would not be necessary, Your Honor, is what I intended to say, because the facts below are really not in dispute, and it was just a matter of law, and the trial court erred as a matter of law in finding that Ms. Hawkins' civil law enforcement duties were sufficient. So you're saying we should reverse? You should reverse, Your Honor, absolutely. Ms. Stern, do you concede that Mrs. Hawkins was actually appointed in accordance with the terms of the Nevada statute to be a deputy sheriff? I don't think there's any evidence of the contrary, Your Honor, so I would concede that. Well, you referred in your brief to a ceremonial swearing in in a sort of dismissive way as if, well, it was just kind of a gesture. It wasn't really any serious appointment under a statute of a law enforcement officer, but you're not really trying to take that position here? No, no, Your Honor, just trying to characterize it. Did the sheriff indicate or does the record contain the writing that is required for appointment of Mrs. Hawkins to be a deputy sheriff under the express terms of the Nevada statute? Oh, I don't recall whether it has that. Is there an appointment paper in the file? I know that's what you're asking, Your Honor, and I don't recall seeing an appointment paper, so I guess I can't say conclusively. I can only say that I don't recall seeing it. I think there was certainly a sworn statement from Sheriff Sweeney describing Ms. Hawkins and saying that she was appointed as a sheriff's deputy and then going on to describe her activities on the day that she was killed and her death. Did he testify that he appointed her or just that he swore her in? He didn't testify at the hearing. He provided a sworn statement. Declaration. His sworn declaration, which let me just... I recall that he said he personally swore her in, but I don't recall deposition testimony or declaration testimony saying that he appointed her. I don't recall that saying that either. The affidavit or the sworn statement that I'm looking at is in joint appendix at page 90 and doesn't seem to say that in his original note about her, the circumstances surrounding her death also, I believe, didn't specifically say that. But is there any dispute at all about what her actual duties were that she was assigned? No, none at all, Your Honor. And what it was that she wasn't assigned? Absolutely none. The court below found that the duties she actually was assigned and performed included social and ceremonial activities, search and rescue. It's all outlined in the court's opinion in joint appendix 16, and there's really no dispute that those were her duties. All right. Thank you. Thank you, Your Honors. Mr. King. Mr. King. Welcome. Good morning. Thank you very much. When the issue of whether or not she's law enforcement is pivotal in this particular matter, I think the court, having reviewed the opinion of the court of claims, which was quite specific, if, in fact, what the court of claims articulated her duties were is, in fact, not in dispute and conceded, the court of claims said she had the powers to arrest and the powers to carry a firearm. The reason the court of claims came to that actual determination is because not just looking at the statute in Nevada, of which you have a copy of, I think, page 97, 96, it states that they have the full authority to appoint deputies and to have them serve. But the court interpreted the statute as not requiring criminal law enforcement activity. Are you saying that even though the court may have erred in the interpretation of the law, it got the case right on the facts? I don't believe the court erred as a matter of law, Your Honor, but, in fact, as a matter of fact, they determined and stated in the opinion that, pursuant to the totality of the facts before in the record, she had full law enforcement authorities, including the powers to arrest and the power to carry a firearm if she so chose. But didn't the court interpret law enforcement officer as not requiring criminal law enforcement activity? Yes, they indicated very clearly, Your Honor, and I understand this. And we're a court of appeals. The court indicated that if it were engaged in the enforcement of laws, as the statute was at that time, that that was sufficient. But the statement by Mr. Stern was that we have somehow conceded, and it wouldn't need to be remanded on the issue of whether it was criminal law. In the opinion, the court said, well, it's an interesting dialogue that you are having on the subject. It's totally irrelevant to the determination. And so they made no decision about whether she was enforcing criminal laws. In fact, in the case notes on page 96, where the statute is laid out for the court, there is a case cited, and I don't have my glasses, but the case is Allen v. Inglis. And in it, they address what specific direction did the sheriff give this particular deputy? And the issue is, did the deputy, notwithstanding, since the sheriff didn't actually specifically tell him, you have the authority to do an act, did he have the right to do the act? And the Nevada Supreme Court said, yes, because he has the right to do anything that a deputy sheriff has. And that's the law in Nevada. Then we have hearings in Nevada regarding this particular deputy on the issue of workers' compensation. And that's part of the record. And in that factual hearing determination, which was contested, the outcome was that she was a reserve deputy sheriff, because you asked the question, was she actually appointed? They had determined that she was appointed, that she was, as a reserve deputy, she was statutorily considered to be a paid member of the sheriff's department. Where exactly, then, are you disagreeing with the government's position? Are you saying that the reference by Ms. Stern to primary duty is the wrong test? Where is the exact disagreement? Clearly, in the big picture, Your Honor, I believe it would be at the time of this statute, where it says enforcement of the laws, to have promised Mrs. Hawkins that her family would be protected in the event that she was killed, that she would get this death benefit. In the big picture, then to sit there and point a finger and say, as they did in their brief consistently, well, theoretically she had law enforcement authority. No, no, come on, answer the question. Ms. Stern argues that there's a meaningful legal distinction between duties conferred by a statute and primary duties as a matter of assignment by your superiors. Now, are you saying that it has no legal significance what one's primary assigned duties are? No, I'm not saying that at all. Her primary duties were to do everything that a deputy sheriff was doing. What's your basis of saying that? Because that's what the total record shows. She was a sworn, uniformed, badge-carrying deputy who, upon her death, was awarded the recognition Factually, factually, were there instances in which she made arrests or investigated crime or interrogated prisoners or did other undeniably cop-like, if you'll pardon the expression, acts? Absolutely. I think she was engaged in one on the day she died. She was engaged in a crime-fighting activity, a law enforcement activity, in this particular case. How so? Because the wild horses had a designated owner. The owner was incapable, and this is in the record, was incapable of getting the horses corralled. The property owners whose property was being damaged complained. The sheriff said, I must act. And he compelled Nancy Hawkins, as his deputy and one of the most experienced riders, to be there on a day she did not want to be there, and that's in the record. And so she arrived at the scene in a uniform, with a badge, with her identification, and the equipment of a deputy sheriff mounted sheriff deputy. Did she have a gun? Pardon me? Did she have a gun? I do not have any evidence that she had a gun. The answer is no, because she was never issued one. She wasn't authorized to carry one. That's not correct, Your Honor. Being authorized to carry a gun and carrying a gun are two different things. She was empowered under Nevada law to carry a gun. People talk about it being in the Wild West. She chose to carry a gun. Where is it in Nevada law that empowers her to carry a gun? She's a deputy sheriff. She can carry a gun. She's empowered to carry a gun. The court below the foul. Where does it say that just because you're a deputy sheriff you carry a gun? It doesn't say you have to carry a gun. It says you have all the rights of the sheriff. May have all the rights. It says he may appoint, Your Honor. May appoint. And go on, read the rest. And may authorize. Isn't that right? Correct. So you can authorize for less than that. Was she authorized to carry a gun as a deputy sheriff? My understanding is the court concluded factually she was. My understanding is if she had chosen to carry a sidearm, and other posse members did, that she could have. Whether she was qualified to carry a gun is not in the record. What's the crime? The crime was the trespass. And as the U.S. attorney is aware, the U.S. attorney in Nevada prosecuted ranchers for allowing cattle to graze on BLM land without a grazing permit. And it was a criminal prosecution. So to suggest that there isn't, and we provided these statutes and cases, to suggest that it was not a crime to allow these horses to damage people's property is, I think, incorrect. The court determined that it was an irrelevant argument and made no finding. Said it's irrelevant. If the statute as it does struck out the word criminal. Counsel, when you say made no finding, it's important to get straight what the proceeding was here. I was under the impression that this was a review on an administrative record. Isn't that correct? Or is that not correct? It was a review on an administrative record. So when you keep talking about the trial court made findings, the trial court doesn't make findings in a proceeding that's review on an administrative record. The trial court reviews the sufficiency of the evidence to support the agency's findings and conclusions. Okay. I'm sorry, Your Honor. I was taking that language from the opinion of the court. I said that the court has determined as a matter of fact and law that Ms. Hawkins was a law enforcement officer. So if I'm mischaracterizing that construction, I apologize. Well, I guess what Judge Mischel is asking is did the court of claims mischaracterize what it was doing? I don't believe so at all. I think the court of claims had the record before it, and it made a factual determination. It can't make factual determinations. That's the whole point of my question. It can review the factual determinations of the agency, and it can draw legal conclusions, but it can't make findings of fact. I understand. With that said, Your Honor, I believe the court made the decision that determining whether or not it was a crime was not necessary for them to make their analysis. And in this case, their analysis turned on the fact that the statute, while they conceived that the statute had changed and language was taken in and out, this court may be aware, and I'm not a scholar on the issue, but my understanding is there was a time in the 80s when crime was becoming a big concern across the country, and so they decided to recruit more law enforcement officers. And my understanding in the legislative history here is that it was purposely expanded by taking out the limitation on this particular benefit. What is your evidence from legislative history of any genre that when the word criminal was removed from the phrase the criminal law, that Congress intended for civil-only enforcement people to be added to the potential category of beneficiaries? I think that's a, as you characterized it, a red herring in the sense that when you talk about civil-only, she was never civil- Answer the question. The question is, you say your understanding of the legislative history is they wanted to expand the coverage. So I'm saying when they removed the word criminal from the phrase the criminal law, so it just read enforce the law without the adjective criminal, what can you point to in the legislative record when that change was made that the intent of Congress was to greatly expand the category of beneficiaries? I think it's in the legislative record. Where? Some of which is- Where? What report? What testimony? What floor statement? What manager's explanation of the content of the bill? In the opinion of the Court of Claims, they actually addressed- That's not legislative history. I'm talking about what happened in the Congress. When Congress took a word out of a phrase, you said they intended to enlarge coverage. I'm saying where did anybody speaking for Congress purport to intend to enlarge the coverage? And they cite in the opinion of the Court of Claims, they cite to the legislative dialogue and state that it was an effort by the lobbyists to expand and or restrict, and they lost. And that's what it says. They made an effort to restrict it by making it criminal. The question for you is what are you depending on? I don't care for the moment what the trial judge was depending on. What legislative history are you depending on for saying Congress intended to enlarge the beneficiaries? Well, I think just the statute, the changes in the statute itself is clear in its meaning. If you have the word criminal, then it is restrictive to criminal. And if you purposely take it out of the legislation- Wait a minute. Wait a minute. The key is purposely. What? The key is purposely. So what Judge Michel wants to know is can you point to us where in the congressional record it is a purposeful exclusion of the word criminal rather than an inadvertent one, which under the X case, whatever it is in the Supreme Court, would invite the administrative agency to insert its own interpretation. So where does it say that it was a purposeful- Well, Your Honor, maybe the best way for me to answer that is to say I do not want to represent or misrepresent the legislative history. I'm not a scholar in the subject. It seems patently clear in just reading the most basic statements in the briefs as well as in the statute that when you take out a word that is significant and then later you add it back in that it was done purposefully. It is recognized. I understood it was recognized. If the intent was to enlarge it to cover civil only enforcers, wouldn't the drafters have had to remove the phrase that's at the very beginning of the sentence about crime control? Well, Your Honor, I'm confused by you saying civil only. I don't think that ever is- I know it's addressed by the appellant's brief and they use that word. I took it to be- Where did it ever say- Part of the rationale of the trial judge for her overturning the regulations as invalid compared to the statute. I do not believe that anywhere it is addressed that somehow they made it civil only. First, the question is, is it a public safety officer? Is it somebody in law enforcement? Then the issue becomes if it is a law enforcement officer that's involved- No, the issue is what is a law enforcement officer? And the trial judge held that a law enforcement officer is somebody who either enforces criminal laws or enforces civil laws. It covers both. And you argue, quite logically, that that seems supported by the removal of the word criminal by the Congress. But the sentence in which the word criminal was removed starts out by talking about crime control. So why wouldn't it have been necessary for a drafter with the purpose you impute to remove the phrase crime control? And I understand. Good question. The fact is that if you want somebody to join law enforcement and the goal of law enforcement generally is crime control, so our motivation for hiring and inducing people to come into the law enforcement is crime control. But if you die, if you're killed in the line of duty- Let me ask you- Whether you were enforcing a criminal- Let me ask you this. That would have been a pretty big change, wouldn't it? To say, okay, now law enforcement officer includes enforcing civil laws. It would have been so- That would have been a big change. It would have been so significant, Your Honor, that it didn't need the extra dialogue. Oh, I see. So you're anticipating my question. You concede that it's a big change, but you're saying it's so big nobody needs to pay any attention to it or to call attention to it. I didn't say didn't need to pay attention to it. It would be like changing so many laws. If there's something minute or of a minor significance, you might need to put it in the record to dialogue why we did this too. Well, isn't it odd that if you're making this big change to expand the universe of people who are entitled to these benefits that you might not want to call attention to that? I mean, this is a big change. I think that's why they made the change, Your Honor. It's just for that reason. And when they put the criminal law back, did they then say, oh, we want a change? Or did they just put criminal law back without any comment? But behind the scenes, I think there's, again, you asked me to cite to it, I think there's the record of the dialogue as to whether we're going to expand and retract and it's too inclusive and we don't want people that aren't law enforcement officers to get the money or we don't want people getting the money that are hanging ornaments on Christmas trees. But in this case, in this very case, why we're here is a mystery since Nancy Hawkins was the county commission, indicated she gave her awards and said she was killed in the line of duty as a sworn law enforcement officer. It's conceded that she's a deputy reserve sheriff. Well, none of those are under this statute and through this administrative process. So they're entitled to reach whatever conclusion they want and it has no force in effect here. I don't have any doubt that Ms. Hawkins deserved all of the benefits and all of the praise and everything that the local authorities gave her. But we're here to administer a statute and the administrative process. So those things really don't enter into our consideration. But your honor, the changes that took place and the attempt to narrow it somewhat to crime fighting. Well, I find it kind of difficult to fathom, as we pointed out in the brief, some of the issues that might come up. And officer, as we pointed out, investigating a traffic accident, it's not a crime, is taken out on the road. Does he not get the benefit that the officer that's investigating a DUI since it's a crime he does? If it's a law enforcement officer, it doesn't matter what the person is doing. Thank you, your honor. But this isn't a law enforcement officer because she didn't have the criminal law enforcement function. Well, that's not true, your honor. That's what's so patently clear in the record. I say you have to take a look at if the state of Nevada says by its laws she's a deputy reserve sheriff and she is a deputy reserve sheriff and they concede that she's a deputy reserve sheriff and it says that she has all the powers of the sheriff once sworn and conferred. And then the sheriff himself, Sheriff Sweeney, submits an affidavit saying this was a law enforcement activity that could not have been engaged in by somebody that was not a sworn law enforcement officer. If Ms. Hawkins had been marching on her horse in a parade and somehow fallen off or been hit and killed, do you contend she would have received these benefits? Well, my understanding is reading the regulation, the answer is yes. Can you give me a yes or no? Yes. All right, go on. Because, your honor, my understanding is the first question you ask is is she a law enforcement officer? And if she is a law enforcement officer, then the next question is was she killed in the line of duty? And my understanding from the regulations that have been proffered is they allow a law enforcement officer to receive benefits if they're engaged in training activities or civic events. So your question is a parade, assuming that's a civic event. It's my understanding she would have been entitled to it. In this case, it's even a more extreme case. She's compelled to come out to stop a crime. She arrives. She's in a uniform. She has her badge. She's working with other uniformed full-time sworn officers. They've got a helicopter with a siren. They're engaged in this activity to stop this damage to property. And, unfortunately, she's killed in the process, right then on the scene. She left a daughter of 16 and a husband and six older children, five other older children, and the thought was she'd get a death benefit because the statute in 1984, which is the one that's applicable because she died in December and in October, so I understand that the law changed to say enforcement of the laws. Let me ask you this. Suppose the law had never changed to omit criminal. Then would you concede that you wouldn't have a claim? No, because she was enforcing a criminal law. That was our brief and that's their complaint. In the very beginning, we indicated it was a crime. We've helped study that it's a crime. We've introduced the statutes that say it's a crime. So, in your view, it didn't make any difference whether they eliminated the word criminal or not from the statute? Under this particular case. We're not talking about any other case. It would not matter because, in our opinion, she was crime fighting. We do acknowledge that the court said that doesn't matter. She was engaged in a law enforcement activity even if it wasn't a crime.  Thank you. Thank you very much, Your Honor. It's an honor to be here. Ms. Stern, you have a minute and a half. Thank you, Your Honors. I believe the court does understand our arguments concerning the statutes and regulations at issue in this case, including the Nevada statute and the difference between allowing authority to be delegated versus whether it actually is. So, I'll limit my rebuttal to the one point that I believe was raised by appellees that I did not address initially. And that is their argument that a remand is necessary in this case because Ms. Hawkins was, in their view, engaged in crime fighting activities on the day of her death. And they point out that the trial court didn't find it necessary to resolve whether rounding up wild horses, whether that involved a crime. A remand is not necessary for the court to resolve that. That is a purely legal question. There is no dispute as to what Ms. Hawkins was doing. She was part of a roundup of wild horses that belonged to no one but were trampling on private property. So, no one could be prosecuted for that? Unless horses can be prosecuted, yes, Your Honor. So, therefore, that was not a crime. And in any event, this court clearly can resolve that legal question without remanding it to the trial court. And I think finally, I believe Judge Ellis asked when they put the word criminal back into the statute whether there was any commentary. And in the congressional record, yes, there was comments indicating that the reinsertion of the word criminal was, quote, making the text conform more clearly to the legislative intention which has been correctly reflected in the Bureau's longstanding interpretation of the text. A clarification, not a change in your opinion. Exactly, Your Honor. Who was Congressman Smith in terms of the processing of that amendment in 2006? I believe he was on the committee, the main committee that handled that legislation. That's my recollection. But I don't remember beyond that. All right, thank you. Thank you, Your Honor. We'll take the case under advisement. We thank both counsel. We'll now call Appeal Number 06-503.